## CHARLES C. WILLIAMS,

v.

## JAMES CORWIN and others.

Upon a bill taken as confessed and an order of reference thereupon to a, master, such allegations of the bill as are distinct and positive, are to be taken as true, without proof.

And such allegations as are indefinite, and such demands of the complainant as are uncertain, must be established by proofs.

So, demands which from their nature or the course of the court, require an examination of details, must be made out by evidence, to be produced by the complainant.

THIS cause was submitted to the court, upon a special report of master Hoffman, the object of which was to obtain instructions from the court.

Mr. HOFFMAN had also reduced to writing, the result of his investigation into the questions submitted ; which result was approved in general terms by the court ; and the substance of the master's investigation, was as follows :

On the effect of a bill taken pro confesso.

By the ancient course of the court, no bill could be taken pro confesso, unless an appearance had been entered. Nodes v. Battle, 2 Ch. Rep. 283. Nelson's Rep. 1. Cursus Can. 116. 1 Prax. Alm. 7. 2 Freeman's Rep. 127.

If the defendant would not appear this court could not decree the bill pro confesso, but ordered a sequestration against his real and personal estate until he cleared his contempt.

In order therefore to obtain an appearance a long chain of process was employed, ending in a sequestration of the defendant's property. By this process, his lands were entered upon and his personal property taken possession of. See also 1 Ves. 86.

Indeed the rule seems to have been then, as it clearly is now, that properly the sequestration on mesne process was not to be executed, by a sale of the goods, but only by keeping the party out of possession ; being only to found the process of taking the bill pro confesso upon the party's contempt. After the bill was taken pro confesso and a duty decreed, the sequestration was executed, and the party upon application to the court obtained satisfaction of his demand. Rowley v.

*1824.*
*31st. July.*

*Proofs before the Master.*

Ridley, 2 Dick. 622. 125. 3 Br. c. c. 71, and 2 Ves. and Bea. 184. Ambler, 421. Bunbury, 272. 1 Ves. 86. and cases in 4 Ves. 735.

But as the bill could not be taken pro confesso, unless an appearance had been obtained, the complainant was without remedy where he could not take the defendant upon process; and where he did take him, and the defendant persisted in refusing to appear, he could only have him committed and detained until he cleared his contempt by entering his appearance.

The common law process of outlawry, gave ultimately to the party the means of obtaining his demand. In that, as in the process in equity, the primary object of the proceeding was to compel an appearance, so that any plausible ground was sufficient to reverse the outlawry; but it became at last a matter of course, that the forfeited goods of the outlaw which strictly were for the benefit of the king alone, should be applied to the payment of the complainant's demand, by petition to the exchequer. 3 Black. Com. 284. Tidd's Practice, tit. Outlawry.

By the course of the court therefore, no decree could be obtained against a defendant, who could not be served with process. And this remained without remedy until the 5th George 2d. enacted in 1732.

Under the same principle, which made it necessary that a party should appear before a bill could be taken pro confesso, the court, where he had appeared, took uncommon measures to have him perfectly apprized of the proceedings against him. Thus in case of Blackwell v. Geering, Clerk's Tutor in Chancery, 25, the defendant demurred, and was prosecuted to sequestration for want of an answer. This day the plaintiff's bill being read, was decreed pro confesso against the defendant, notwithstanding it was strongly insisted, as in Denny's case against Tilmer, that no such decree ought to be, unless the defendant be taken and brought in person into court to hear the bill read. Even at present when the defendant is taken and committed to prison upon attachment or other process, and brought up on habeas corpus, he is brought up three

times successively and charged openly with the bill, and has the record of it read to him in open court, before it is decreed pro confesso, the court then entering an appearance for him. Newland tit. Bills pro confesso 93. Fowler, 193. Hind. Sol. Assist. 1 Eq. Ca. Ab. 83.

In the case of Johnson v. Desmineere, counsel state, " That though the course of the court now is to take a bill pro confesso after the party has once appeared, and stands out in contempt, till the plaintiff has got to the end of the line ; yet formerly this court did not do it, even in that case, without putting the plaintiff to prove the substance of his bill." 1 Vern. 223. Mosely 383. This was in 1683.

But since the defendant by refusing to answer deprived the plaintiff of putting matters in issue, the court gave him liberty to prove them. The attorney general for the plaintiff also said, that the reasons on which these decrees were founded were, that by the defendant's fault, no issue can be joined, for the plaintiff to prove his case. Curs. Can. 209.

The lord chancellor said, by the old practice of the court the plaintiff was undoubtedly put to prove his bill by witnesses viva voce. And so was every plaintiff at law, his declaration, as appears by those words, et inde producit sectam, where secta signifies the witnesses. So the solicitor general stated, that the practice of proving the bill was laid aside, because the plaintiff often came into court, because he could not prove his case but by the discovery of the defendant. So 17 Ed. 3. 48. Fleta. lib. 2. c. 62. sec. 2. cap. 63. sec. 9. 10. 11. Lucas' cases, 253.

The lord chancellor said, a decree pro confesso is like a judgment by nil dicit, at common law.

In the case of Hawkins v. Crook, 2 Peere Williams, 556, it is stated, that the practice of taking a bill pro confesso, is not of long standing ; the ancient way being to put the plaintiff to make proof of the substance of his bill, though the defendant had stood out to the last process, a sequestration.

The master of the rolls decreed, the bill being in part read, that the defendant account for the rents and profits received

**1824.**

WILLIAMS
v.
CORWIN.

by him; that there should be a perpetual injunction, and a. reconveyance. The bill was to set aside a will for fraud, which devised the estate to the defendant.

"A bill was brought against the defendant for a discovery, as the material part of the case depended upon a discovery. The defendant would not answer, but stood out the whole process of contempt, to a sequestration, and the bill was taken pro confesso, and there was a decree against the defendant ad computandum. It was moved to discharge the sequestration on payment of costs. Lord Hardwicke. It was said for the defendant, that this differs from the case, where a certain duty is decreed upon a bill taken pro confesso, because there the estate may be sold, and the money applied in discharge, pursuant to the decree, but here as the decree is ad computandum, it may be presumed that the defendant may have a balance in his favor." Maynard v. Pomfret, 3 Atk. 468. A. D. 1746. He kept the sequestration on foot as a security for the defendant's appearing before the master to take the account. Vaughn v. Williams, Dickens, 354. A. D. 1762.

"A bill was preferred against a quaker for tithes, who refused to answer upon oath; the defendant was brought to the bar, and having been brought three times before, the bill was taken pro confesso, and referred to a master to examine what was due, and to be armed with a commission for that purpose." Anon. 2 Freeman's rep. in ch. 27. Dickens, 588. This was in 1677.

When a bill is to be taken pro confesso, the practice in England is to procure an order for the clerk in court to attend with the record of the bill, that it may be taken pro confesso, and the cause is set down for hearing, except where there is but one defendant and he in custody. And the court itself pronounces the decree. Newland 95. cap. 2. sec. 12. 3 Ves. 372. Geary v. Sheridan, 8 Ves. 192. Dickens, 667.

To obviate the injustice, which must frequently arise to the plaintiff, from the defendant's obstinately refusing to come to issue with the plaintiff, respecting the matters in dispute, the Roman law entertained a fictitious contestatio litis, which

they called a quasi contestatio. Barton's suit in Equity 98. Gibson cod. 44. c. 24.

The same rule prevailed in the canon law. Bows v. Jurat, Lucas' cases, 440. cited as 10 Mod.

In Fowler's exchequer practice, is the form of an order to charge the defendant with the bill the third time, being brought up upon a habeas corpus, and to take it pro confesso. It runs, " that the plaintiff's bill be and the same is hereby taken against the said defendant as confessed," and then directs a reference to the deputy remembrancer, to take an account according to the prayer of the bill; authorises him to examine the defendant upon interrogatories, and arms him with a commission to examine witnesses. 1 Fowler Ex. pr. 222. Also Benson v. Vernon, 3 Br. P. C. 626.

As a member of parliament could not be arrested upon process, and brought up to be charged with the bill, and it could not often be shown that he absconded to avoid process, a decree pro confesso under the 5th George 2d. could not be obtained, if he refused to appear. By statute 45th George 3. cap. 124. a provision was made [to meet this case. Newland, tit. Bills, pro confesso. 16 Ves. 437. 17 Ves. 368. Rules 35. 36. of the courts of equity of South Carolina. 1 Dess. Eq. Rep. 62. Laws of New Jersey, page 496. 15 ed. 1821.

As to the rule at law, it is admitted that where judgment is obtained by default, if the action be in debt, covenant, or the like, to recover any fixed specified sum, and there is no occasion for the interference of a jury to ascertain the amount of the plaintiff's demand, it is then a final judgment, and plaintiff may proceed immediately to get his costs taxed, and sue out execution. Cr. Eliz. 692. Moor, 522. 1 Chitty, 107. 4 T. R. 275. 493. 1 Tidd, 523. 2 Saunders, 106.

It was much controverted, whether upon executing a writ of inquiry in England upon a promissory note, its execution must be proved. And the statute for the amendment of the law, appears to have been framed upon the supposition that it was necessary. Billers v. Bowles, Barnes, 233. Douglas, 315. 2 Strange, 1149. 3 Durnford and East. 301.

WILLIAMS
v.
CORWIN.

And the point is so settled in the supreme court of the United States. The chief justice said, " the default dispenses with the proof of the note, but not with its production. The note must be produced or accounted for." Sheehy v. Mandeville, 7 Cranch, 208. It appears manifest from the cases cited, that to a certain extent, the court will decree upon the naked allegations of the complainants bill, and give the relief proper to the case. 2 P. Wms. 556.

What principle can be extracted from these cases but this, that wherever the allegations of a bill are of a nature so distinct and positive, that, taking them to be true, the court can make a decree upon them, it will upon the order pro confesso, decree without proof ? Where they are in their nature so defective or vague, that a precise decree cannot be made upon them, proof must be adduced, from the necessity of the case. And it must be in order to see what decree the allegations will bear, that the court requires the bill to be produced to it, and pronounces the decree itself.

In Hawkins v. Crook, before cited, the bill alleged a devise to have been obtained by fraud. The decree assumed, that the order to take it pro confesso admitted the facts charged as fraudulent, and the court plainly took them to amount to fraud. Then it decreed the appropriate relief, a perpetual injunction, and a reconveyance by the devisee. An account was also directed, the party having no doubt, received rents and profits. And there proof was undoubtedly requisite, for the allegation must have been indefinite, that is, an indebtedness generally, on account of his perception of the rents. Had the bill stated the receipt of a fixed certain sum, and that after all proper deductions and allowances, it was due, I cannot perceive a reason why the decree might not have been for payment of that sum, as well as for the other relief given.

MR. ROBERT, for the complainant.

MR. E. W. KING, for the defendants.

THE CHANCELLOR. The bill has been taken as confessed, and a reference has been made to a master. In proceeding before the master, it has become a question, how far the complainant is bound to establish the allegations of his bill, by

proofs ; and the cause is now submitted to the court, for some direction, upon that question. Two papers prepared by the master, are laid before me ; one, a report stating the difficulty which has occurred before the master, and the other, an examination of the effect of taking a bill as confessed. The master has well discussed the general question, and I agree with him, in his general conclusion. When the allegations of a bill are distinct and positive, and the bill is confessed, such allegations are taken as true, without proof. Where the allegations of a bill are indefinite, or the demand of the complainant, is in its nature uncertain, the certainty requisite to a proper decree, must be afforded by proofs. The bill when confessed by the default of the defendant, is taken to be true in all matters alleged with sufficient certainty : but in respect to matters not alleged with due certainty, or subjects which from their nature and the course of the court, require an examination of details, the obligation to furnish proofs, rests on the complainant.

The complainant in this case, is accordingly, not bound to prove those allegations of his bill, which are distinct and positive. The bill and the order of reference, have not been furnished to me ; and if they were before me, it would be irregular, to anticipate the master, in his decisions of particular questions. The opinion now expressed, will be sufficient, until the master shall report on the order of reference.